UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------

| | |
|---|---|
| LBB CORPORATION d/b/a SPUNK VIDEO, ) | |
| ) | Civil Action No.: |
| Plaintiff, ) | **08-CV-04320 (SAS)** |
| ) | |
| v. ) | |
| ) | **ECF CASE** |
| LUCAS DISTRIBUTION, INC.; LUCAS ) | |
| ENTERTAINMENT, INC.; LUCAS PRODUCTIONS, ) | |
| INC.; and ANDREI TREIVAS BREGMAN p/k/a ) | |
| MICHAEL LUCAS; ) | |
| ) | |
| Defendants. ) | |

-----------------------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

This Memorandum of Law is respectfully submitted in opposition to the motion to dismiss

of Lucas Distribution, Inc., Lucas Entertainment, Inc., Lucas Productions, Inc., and Michael Lucas

p/k/a Andrei Treivas Bregman (collectively referred to as "the Lucas Defendants"). All exhibits

annexed hereto are made a part hereof.

## ARGUMENTS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### POINT I – The Rule 12(b)(6) Standard.

The Lucas Defendants seek to dismiss Plaintiff LBB CORPORATION d/b/a SPUNK

VIDEO's (hereinafter "Plaintiff" or "LBB") first claim for relief pursuant to Federal Rules of

Civil Procedure ("Fed.R.Civ.P.") § 12(b)(6). That section provides that "[e]very defense to a

claim for relief in any pleading must be asserted in the responsive pleading if one is required.

But a party may assert the following defenses by motion: … (6) failure to state a claim upon

which relief can be granted;". *Id.* When considering a motion to dismiss pursuant to

Fed.R.Civ.P. 12(b)(6), the court must accept as true the facts averred in the complaint.  *SMJ Group, Inc. v. 417 Lafayette LLC*, 2006 WL 2516519 (S.D.N.Y.).  *See also All R's Consulting, Inc. v. Pilgrims Pride Corporation*, 2008 WL 852013 (S.D.N.Y.).  The application may be granted only if it becomes apparent that the plaintiff cannot prove facts supporting the claim and entitling the plaintiff to relief.  *SMJ* at 2.  The Lucas Defendants aver that the alleged acts of unfair competition and consumer deception of which Plaintiff complains are protected by the Copyright Act and are therefore preempted.  The Lucas Defendants argue that the claims fall within the subject matter of the Copyright Act because "the unfair competition claim applies to a work of authorship fixed in a tangible medium of expression and falling with the ambit of one of the categories of copyrightable works."  This, however, is an erroneous conclusion.  The claim(s) must meet "subject matter requirement" <u>and</u> the "general scope requirement" of the Copyright Act to be preempted.  *See Price v. Fox Entertainment Group, Inc.*, 473 F.Supp.2d 446 (S.D.N.Y.2007) and *Kregos v. Associated Press*, 3 F.3d 656, 666 (1993).

**POINT II – Plaintiff's Claims for Unfair Competition, Dilution and Deceptive Practices are not Preempted by the Copyright Act Because They Include an "Extra Element".**

Plaintiff's unfair competition claim is not preempted.  "A cause of action is not preempted by § 301 if it involves an 'extra element' beyond the acts of 'reproduction, performance, distribution or display,' which are protected by the Copyright[ ]Act, that renders the claim qualitatively different from copyright infringement."  *Too, Inc. v. Kohl's Department Stores, Inc.*, 210 F.Supp.2d 402 (S.D.N.Y.2002) and *Kregos, supra*.  New York General Business Law § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  *Id.*

Unfair competition includes "a wide variety of illegal practices, including misappropriation or other forms of 'commercial immorality' ".   *Too*, at 405 *citing Roy Export Company Establishment of Vaduz, Liechtenstein v. CBS, Inc.*, 672 F.2d 1095, 1106 (2d Cir.1982).   The Lucas Defendants erroneously assert that Plaintiff's state law allegations meet the "subject matter requirement" <u>and</u> the "general scope requirement" of the Copyright Act.

The "subject matter requirement" sets forth that this provision of the Copyright Act "is satisfied if the claim applies to 'a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works".   *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F.Supp.2d 291 (S.D.N.Y.2007) *citing Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir.2004).   "The general scope requirement is met 'only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law.' "   *Id.* at 296.   "Additionally, 'the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim."   *Id.*   The video "Nasty Piss Boys" (hereinafter "the Work") falls within the parameters of the subject matter requirement.   Consequently, the focus here is the inapplicability to the general scope requirement which, if germane, would preempt Plaintiff's claims of unfair competition and deceptive acts.

"New York General Business Law § 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.'   Although the statute is, at its core, a consumer protection device … 'corporate competitors now have standing to bring a claim under this [statute] … so long as some harm to the public at large is at issue,' ".   *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (1995).   "[T]he gravamen of the complaint must be consumer injury or harm to the public interest."   *Id. quoting Azby Brokerage,*

*Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y.1988). Stating a claim under New York General Business Law § 349 requires the allegation that (1) the defendant's deceptive acts targeted consumers, (2) those acts are misleading in some material way, and (3) injure the plaintiff.[1] *SMJ Group, Inc. v. 417 Lafayette LLC*, 2006 WL 2516519 (S.D.N.Y.). In *SMJ*, plaintiff owned two (2) restaurants, one in Manhattan and one in Brooklyn. Defendant was a not for profit organization that sought to improve working conditions for New York City restaurant workers and to spread a model of employee owned restaurants. *Id.*

Defendant stationed persons in front of Plaintiff's restaurants handing out leaflets that displayed one of Plaintiff's trademarked logos together with text that read "Do you really want to eat here?". *Id.* The leaflets also included a statement that workers have sued the company for misappropriated tips. *Id.* The Court rejected the state law claim for deceptive business practices concluding that "Plaintiffs did not allege any harm to consumers or the general public, besides the general confusion that always exists in connection with a claim of trademark infringement." *Id.* at 5. The court further concluded that the most serious harm would be that of a customer passing up a meal at one of plaintiffs' restaurants. The harm in this case is not as simple.

In its complaint, LBB asserts, *inter alia*,

> 28. Since as early as November 2007, LBB has prominently displayed the "Nasty Piss Boys" title and mark in commerce in connection with the advertising, sale, marketing and exploitation of the film throughout Northern America. In this regard, the Work is distributed through interstate commerce and is available for consumers to purchase and/or rent in traditional adult retail outlets as well as on Plaintiff's Internet website: http://www.spunkvideo.com/

---

[1] With regard to Plaintiff's claim under New York General Business Law § 349, Defendants posit that Plaintiff may rely on the Second Circuit's decision in *Samara Bros., Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120 (2d. Cir. 1998). Inasmuch as the United States Supreme Court reversed that ruling in *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339 (2000), Plaintiff places no reliance on the underlying decision of the Circuit Court.

\*       \*       \*

31.    LBB has continued to successfully utilize its copyright in the Work. In particular, LBB is well known to its customers for producing and distributing "fetish" type adult gay pornography of which type the Work qualifies.

\*       \*       \*

42.    Upon information and belief, the Lucas Defendants' unauthorized use of the Work has caused and is causing actual confusion amongst consumers whereby the public is deceived and confused into believing that the Defendants' film is produced, provided, endorsed or authorized by Plaintiff.

43.    Upon information and belief, the Lucas Defendants' have continued to use Plaintiff's copyright that is confusingly and substantially similar or identical to the Work despite knowledge by the Lucas Defendants of LBB's superior rights, title and interest in the Work and despite LBB's express written request to terminate all use of Plaintiff's copyrighted work.

\*       \*       \*

46.    The acts of infringement by the Lucas Defendants constitute misappropriation of the Work that does not parallel, resemble, correspond, intersect or give rise to social commentary, criticism, comic effect or ridicule.

Complaint, pgs. 6 – 9.

Inasmuch as the Lucas Defendants are selling the video "Raw Twinks in Czech" in interstate commerce, that portion of the first element is satisfied. Answer, ¶¶ 34 & 35. With regard to the third requirement of New York General Business Law § 349, Plaintiff already averred damage and the Lucas Defendants admit that "a photograph that appears on the DVD cover of *Raw Twinks in* Czech also appears to be present on what is advertised as the DVD cover of Plaintiff's claimed film on Plaintiff's website …" Answer, ¶ 36.[2] The Lucas Defendants

---

[2]    For comparison, copies of the DVD covers for "Nasty Piss Boys" and "Raw Twinks in

further admit that Plaintiff and its counsel have demanded and continue to make demands regarding cessation of exploitation of the DVD *Raw Twinks in Czech*."  Answer, ¶ 40.  The issue here is whether the acts of the Lucas Defendants are deceptive and misleading in some material way and "whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor."  *Securitron*, at 264.  The acts of the Lucas Defendants are deceptive and materially misleading.

As stated in Plaintiff's complaint, the Work is a four (4) scene "fetish" type adult gay film featuring the following performers/models:   Vaclav Skrabanek, Erik Mlynarik, Lucas Prchal, Jakub Korous, Frantisek Smejkal, Tobor Kovacs, Bohumil Horacek and Jiri Skrabanek. Specifically, the Work is a "bareback" video (adult sex without the use of a condom).  "Raw Twinks in Czech", being identical to the Work, also is a bareback video.  MICHAEL LUCAS admits that he is a pornographic film star.  Answer, ¶ 1.  Further, in a sworn declaration dated April 3, 2007, see exhibit "3" annexed hereto, MICHAEL LUCAS stated

> I have been in [the pornography] business since 1996 and have performed under the name Michael Lucas since 1998, when I created my own company, Lucas Entertainment, Inc. … Lucasentertainment has produced over 65 motion pictures, most of which I also directed and performed in.  I also run a distribution arm, Lucas Distribution, Inc., which primarily distributes Lucasentertainment's own titles.

Lucas Decl. ¶ 3.[3]

MICHAEL LUCAS further avers that

> Over the nine years of its existence, Lucasentertainment has

Czech" are annexed hereto at exhibits "1" and "2", respectively.

[3]      This declaration is part of the court's record in the matter of *International Media Films, Inc. v. Lucas Entertainment, Inc., Lucas Distribution, Inc. and Andrei Treivas Bregman p/k/a Michael Lucas*, No. 07-CV-1178 (JGK).  Only relevant and excerpted portions of the declaration and exhibits annexed thereto are attached here at exhibit "3".

established itself securely as one of the few US-based, stable, recognized providers of reliably high quality gay adult videos. At the same time, I myself have become famous in the small world which is relevant to my business. My reputation is based on three elements: (1) my renown as a sexual performer, (2) my success as an entrepreneur; and my outspoken advocacy of safe sexual practices and against drug use in the gay community.

Lucas Decl. ¶ 4.

At exhibit A1 annexed to that declaration, MICHAEL LUCAS is portrayed with the slogan "SAFE SEX $=$ HOT SEX". Exhibit "3". At exhibit A3 annexed to that declaration, and in an interview with Harvey Fierstein entitled "Porn star wants you … safe", MICHAEL LUCAS discusses his safe-sex campaign. Exhibit "3".

Harvey Fierstein: "Now, you said you don't care if you're HIV-positive or HIV-negative, not if you're going to have safe sex anyway. Why then, would you care if they've done a bareback film before?"

Michael Lucas: "Because this is the only way for me and for the industry, for people who care, to destroy those companies – because the majority of companies [are] about safe sex. So before doing bareback movies those guys will think twice – they will know that once they do it, they will not be able to work for companies like Lucas Entertainment."

Id.

In short, MICHAEL LUCAS holds himself out to the public as a staunch advocate of safe sex. However, the Lucas Defendants, are surreptitiously selling "Raw Twinks in Czech" under another appellation, that of "Galaxia Entertainment", the original producer of Plaintiff's video. Exhibit "2".[4] Plaintiff argues that this conduct by the Lucas Defendants is deceptive as well as materially misleading and harmful act to the public at large. While the level of harm by the

---

[4] Plaintiff respectfully diverts the court attention to the small print located on the lower left-hand corner of this exhibit (the back page of the DVD cover) which cites the producer as "Galaxia Entertainment" rather than any of the Lucas Defendants. Plaintiff does not make a declaration herein whether the statement thereon is congruous with the provisions of 18 U.S.C. § 2257.

Lucas Defendants may not rise to the level of harm as in *Securitron*, "[t]he conduct [alleged] need not be repetitive or recurring, but defendant's acts or practices must have broad impact on consumers at large." *Digigan, Inc. v. Invalidate, Inc.*, 2004 WL 203010 (S.D.N.Y.2004).

The far-reaching impact on consumers at large is obvious and apparent. Publicly, MICHAEL LUCAS is a steadfast campaigner of safer sex practices and contends that he will not hire models that performed in "bareback" movies. Exhibit "3". However, MICHAEL LUCAS intentionally deceives the public by hiding behind the name of a foreign producer not associated with the Lucas Defendants to avoid being exposed as the seller of a bareback video. This intentional deception is an additional element which renders it qualitatively different from a claim for copyright infringement. *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F.Supp.2d 291 (S.D.N.Y.2007) and *Tracy v. Skate Key, Inc.*, 697 F.Supp. 748, 751 (S.D.N.Y.1988). *See also Nimmer on Copyright* § 1.01[B][1][e].[5] This harm is vastly greater than "general consumer confusion" contemplated by the court in the trademark matter *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 1997 WL 137443, at *3 (S.D.N.Y.1997) upon which the Lucas Defendants rely. Consequently, Defendants' circular reasoning and argument that Plaintiff's claims of unfair competition and deceptive acts are preempted and must be dismissed is *non-sequitur* and should be denied.

All of the foregoing applies to Plaintiff's claims for dilution and deceptive practices. "[T]he gravamen of the complaint must be consumer injury or harm to the public interest." *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2000) *quoting Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (1995). "To establish a cause of action pursuant to [Section 350] a

---

[5]     "[S]tate law that allege the tort of 'passing off' or confusion as to the source are not preempted because they do not entail the assertion of rights equivalent to those protected by federal copyright law." *Lone Wolf McQuade Associates v. CBS, Inc.*, 961 F.Supp. 587 (S.D.N.Y.1997).

plaintiff is only required to demonstrate that the advertisement was misleading in a material respect and that he was injured, while an injured person has been defined as one who was misled or deceived by such an advertisement." *Id. quoting McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc.2d 910, 513 N.Y.S.2d 590, 593 (1987). As a result, and since the acts of the Lucas Defendants involve extra elements "beyond the acts of 'reproduction, performance, distribution or display' ", *Kregos v. Associated Press*, 3 F.3d 656, 666 (1993), Plaintiff's state law claims are not preempted.

## CONCLUSION

Plaintiff's state law claims, pursuant to New York General Business Law §§ 349 and 350, are not preempted by the Copyright Act because the acts of the Lucas Defendants involve extra elements beyond reproduction, display and distribution of the Work, to wit, acts that are deceptive and materially misleading. Based upon the foregoing, Plaintiff respectfully suggests that Defendants' motion to dismiss be denied in its entirety.

Dated: New York, New York
        June 17, 2008

                            Respectfully submitted,

                            R. Brent English, Esq., Attorney at Law
                            Attorney for Plaintiff
                            LBB CORPORATION d/b/a SPUNK VIDEO

                            By: _____
                                R. Brent English (RBE – 3575)

                            225 Broadway, Suite 612
                            New York, New York 10007
                            Tele: (212) 962-3195
                            Fax: (646) 390-8021

# EXHIBIT 1





# EXHIBIT 2



**Raw Twinks in Czech**

**FEATURES: Watersports, Enemas, Leather, Whips, Bareback, Ass Fucking, Rough Sex, Paddles, Cum Swallowing, Rimming, Facials, Big Dicks, Feet Play, Degradation, Kink, Spanking and MORE!**

**2.5 Hours of ... Leather, Whips, Rough Sex, Degradation, Kink, Big Dicks, Facials, Spanking**

**Watersports, Enemas, Bareback, Ass Fucking, Paddles, Rimming, Cum Swallowing, and MORE!**

© 2007 GALAXIA ENTERTAINMENT. All Rights Reserved. All actors are professionals 18 years of age or older. The records required by section 2257 of title 18 of the USC with respect to the graphical material are kept by the custodian of records at the office of the manufacturer at the following location: Dr. Glaziera 15/215, Horni Sucha, 73535, Czech Republic. Original date of production September 2007.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INTERNATIONAL MEDIA FILMS, INC.,
A Nevada corporation,

                    Plaintiff,

            v.

LUCAS ENTERTAINMENT, INC.,
a New York corporation;

LUCAS DISTRIBUTION, INC.
a New York corporation, and;

ANDREI TREIVAS BREGMAN p/k/a
MICHAEL LUCAS
an individual,

                    Defendants.

---

Civil Action No. 07-CV-1178 (JGK)


**DECLARATION OF
MICHAEL LUCAS**

I, MICHAEL LUCAS, declare and say:

1.      I am one of the defendants in the above-referenced case.  I make this declaration of my own knowledge, except where otherwise indicated.

2.      For the reasons described below and in the accompanying Memorandum of Law, the Court should deny plaintiff's Motion for a Preliminary Injunction.  It is inconceivable to me that anyone could confuse my motion picture, "Michael Lucas' La Dolce Vita, Part 1," "Michael Lucas' La Dolce Vita, Part 2," or the Director's Cut edition, which encloses DVDs of both motion pictures (collectively "the Lucas Motion Pictures") for the 1960's Italian language art film "Federico Fellini's La Dolce Vita" ("the Fellini Motion Picture").

{A059453.DOC/1}

The Lucas Motion Pictures are sexually explicit adult films, aimed at homosexual men. Even assuming my customers have heard of the Fellini Motion Picture, I cannot believe that I have done anything wrong by using a title which includes three words common in English or Italian and which frequently appear in the titles of motion pictures (not to mention other merchandise, from tomato sauce to shoes to style magazines to cigars). I do not believe plaintiff has the right to prevent the use of those words in a title, or to prevent me from reinterpreting the ideas represented in the Fellini Motion Picture. Customers who seek out my adult movies, which are clearly identified in their titles as emanating from me, could not conceivably have any confusion as to what they are purchasing, or think that Fellini or plaintiff have anything to do with it

**My Career and Success in Adult Motion Pictures**

       3.    I was born in Russia Moscow in 1972, moved to Germany in 1995, and to the U.S.A. in 1997. I have enjoyed considerable success in the niche business of providing adult motion pictures for gay men. I have been in this business since 1996 and have performed under the name Michael Lucas since 1998, when I created my own company, Lucas Entertainment, Inc. ("Lucasentertainement"), one of the other defendants herein, for which I worked exclusively since then. Lucasentertainment has produced over 65 such motion pictures, most of which I also directed and performed in. I also run a distribution arm, Lucas Distribution, Inc., which primarily distributes Lucasentertainment's own titles.

       4.    Over the nine years of its existence, Lucasentertainment has established itself securely as one of the few US-based, stable, recognized providers of reliably high quality gay adult videos. At the same time, I myself have become famous in the small world which is relevant to my business. My reputation is based on three elements: (1) my renown as a sexual

{A059453.DOC/1}

2

performer; (2) my success as an entrepreneur; and (3) my outspoken advocacy for safer sexual practices and against drug use in the gay community. By way of example, copies of Lucas Entertainment's advertisement in the program journal accompanying the 25th anniversary celebration of Gay Men's Health Crisis (GMHC), New York's most important non-profit provider of services to people with AIDS, which was held on March 12th 2007, and my interview with Harvey Fierstein about crystal use which was published in *The Advocate*, a national newsmagazine catering primarily to gay men in August, 2004, are annexed hereto as ExhibitA.

5.    I am currently the most frequently mentioned performer and entrepreneur in my industry, as evidenced by articles which have appeared about me and/or my company in 2006 alone, including profiles in mainstream publications and a portrait photograph in a widely distributed book of fine art photographs of performers in adult motion pictures. A sampling of those articles and other materials are annexed hereto as Exhibit B.

6.    Our business strategy is to build the Lucasentertainment brand and my own personal brand for the future. Far from wishing to imply a connection or association with the owners of rights to Fellini Motion Picture, I intended to use that reputation to drive sales of the Lucas Motion Pictures, which is why my name is the first and most prominent part of their titles. The Lucas Motion Pictures are my biggest investment yet, and I had no intention of allowing IMF to interfere with or benefit from my successfully established personal and business brands.

7.    The Lucas Motion Pictures were made in the fall of 2006 and released on December 6, 2006. During the shoot, we received a significant amount of publicity in the gay oriented press and on gay oriented blogs, thanks to my skillful public relations people. Some of

{A059453.DOC/1}

this publicity spilled into the mainstream press, though not all of it directed at or prompted by the shoot. The most notable piece of mainstream publicity was an article titled "The Lion of Chelsea" in the October 30, 2006 edition of New York Magazine, which seems to have caught plaintiff's attention. This article was a profile of me and my career. The article was planned long before the concept of the Lucas Motion Pictures had become concrete, so it only mentions them in passing.

8.    Another small wave of publicity, again almost exclusively in gay-targeted publications, followed in February of 2007 after the Lucas Motion Pictures won 14 awards at the annual awards show given by an organization called GayVN, the pre-eminent entity recognizing accomplishment in my business. This second wave of publicity had no measurable impact on sales, leading me to believe that not even potential buyers of the Lucas Motion Pictures (not to speak of potential buyers of the Fellini Motion Picture) took much note of this event.

9.    In addition to the <u>New York Magazine</u> article, the shoot received a few mentions in the gossip columns of the New York Post, which regularly pays attention to my activities --- no doubt prompted by the unusual sight of a gay adult motion picture company filming (with all required permits) on New York City streets and the cameo appearance of Savannah Sampson, who has become "mainstream famous" as a heterosexual adult motion picture star. The bulk of the press attention, however, came in reviews and articles in the LGBT press and on gay-oriented websites after the Lucas Motion Pictures were released in December of 2006. These articles and reviews were flattering and positive about the Lucas Motion Pictures, but were exclusively aimed at a gay audience and clearly emphasized their explicitly sexual nature. It is inconceivable to me that any reader would have been misled by this publicity into

{A059453.DOC/1}

4

41.     It is inconceivable to me that the current modest sales rate of the movie, in its tightly compartmentalized retail channels, targeted at a very specific consumer segment, could in any way tarnish or otherwise affect the Fellini Motion Picture or plaintiff's business interests. For my business, on the other hand, the "tail end" of sales is crucial to recoup our investment, make the modest profit that is typical of the gay adult business and fund future projects. An injunction prohibiting further sales would severely impact our cash flow and threaten the viability of my company. The Lucas Motion Pictures represent a significant investment in the future of my company, and without the residual income, my company might be looking at bankruptcy, penalizing not just the owners but also its employees and suppliers.

42.     The retail price of the Lucas Motion Pictures is considerable:  the Director's Cut retails at $99.95.  Each of "Michael Lucas' La Dolce Vita, Part 1" and "Part 2" retails at approximately $44.95.  In contrast, the retail price of the Fellini Motion Picture is just $19.95, according to www.cduniverse.com, the retail outlet on which plaintiff relies in this motion.

I declare under penalty of perjury that the above statements are true.

Dated: New York, New York
        April 3, 2007

{A059453.DOC/1}

                        MICHAEL LUCAS
                              15

{A059437.DOC/1}





With rates of HIV skyrocketing, Lucas (left) is speaking out along with veteran activist Fierstein.

the sex issue

activism

# Porn star wants you... safe

Harvey Fierstein and gay-porn superstar Michael Lucas talk about Lucas's safe-sex campaign (hot!) and crystal meth (not!)

**H**arvey Fierstein has long been active in the battle against AIDS; his recent work includes penning op-eds for *The New York Times* and holding forums in the city to address the rise in crystal meth use and HIV infection among gay men. So when he found out that Michael Lucas, the Russian-born porn star and producer, was publishing an open letter to gays decrying drug abuse and unsafe sex, the four-time Tony award–winner immediately contacted him and initiated a dialogue. Following is a conversation between Fierstein and Lucas at the New York City theater district restaurant Joe Allen. —*Reported by Sean Kennedy*

*Fierstein:* So I never heard of you, but there's a boy in my show, *Hairspray*, who would come to my dressing room and make your face [*imitates Lucas's trademark expression during on-screen sex*] and say, "I'm going to star in a Michael Lucas film!"
*Lucas:* How ridiculous is that? [*Laughs*]

And then he plops your letter down in front of me, and I went, "Holy fucking shit, somebody's actually said it": Hello, my name is Michael Lucas, I'm a porn star, I fuck more than you will ever fuck in your entire life, and I have no fear of getting AIDS because I have safe sex. I don't care if you're positive or negative; I'll never ask because I don't care—we're only going to have safe sex. Better stop blaming society, better stop blaming drugs, better stop blaming the government, better stop blaming the drug companies, and let's just say it: We carry it, we give it, we go out and get it. Cut the shit. Now, what brought you to that point? Why did you feel the need to say that to the community?
Because of statistics—the statistics are horrible.

You saw the numbers going up?
Yes, absolutely. My doctor is one of the leading specialists in HIV/AIDS in New York, and he told me many times it's on the rise. At least four or five friends of mine became HIV-positive in the past 1½ years, and I don't think anyone should get AIDS these days. It's ridiculous. We know everything about it, we know how it can be transmitted, we know exactly how not to get it—it's quite a difficult virus to actually get. ▶

CASS BIRD FOR THE ADVOCATE

the (sex) issue: activism

Can you understand that when you make a statement like "This is a simple disease not to get; it is hard to get this disease," why the person who just seroconverted might say to you, "Why are you blaming me? I didn't go out to get myself sick. Why are you demonizing me?"

Nobody said that. Sex is a very powerful thing. Hunger is probably the only thing more powerful than sex.

I would know nothing about that [laughs].

Sexual desire is incredibly strong, and people lose their heads. It's very important not to, and to be in control. Just put a condom on. This is why I never ask anybody, "Are you positive or are you negative?" It ruins the moment, it's not important, it doesn't matter, it interferes with the privacy of another person, and then it gives you totally nothing, absolutely zero.

But this has been our message for 22 years! For 22 years we've had the same message—why do you think [yours] is different?

My message isn't different; it's just coming from a different person who's actually lived a very, very sexually active life. I had sex five times a day, lots of sex, for years and years, and I didn't get AIDS. It's not a stroke of luck—the only reason I didn't get it is because I use protection. That's all.

So here you are; you've given your message out. But you're a porno film producer, you're hiring models, and [you say] "I don't want you if you've ever done a bareback film" and "You can't work for me if you've done drugs in the last 24 hours." Why don't you want to work on the set with somebody who's on drugs or hungover?



Sexy to be safe: Lucas (above) started an open-letter campaign to remind gay men that hot sex does not include passing HIV.

Because if someone's on drugs, it's a load of trouble for me. I've worked with people on drugs, and it's always terrible, it's never good.

Tell us, tell us, tell us!

These people are never hard. I heard stories that some people can only get hard on drugs—I never saw that. And of course, they look terrible, they're exhausted, they're aggressive.

Say it nice and clear: Crystal is not sexy!

I'm not even talking about only crystal, I'm talking about any kind of drug. It never was attractive, it never was sexy, it never was interesting for me.

Now, you said you don't care if you're HIV-positive or HIV-negative, not if you're going to have safe sex anyway. Why, then, would you care if they've done a bareback film before?

Because this is the only way for me and for the industry, for people who care, to destroy those companies—because the majority of companies [are] about safe sex. So before doing bareback movies those guys will think twice—they will know that once they do it, they will not be able to work for companies like Lucas Entertainment.

OK, tell me what you want out of life.

What I want out of life? I think I'm doing just fine. I want to expand my company—I still want to be the number 1 player on the East Coast in the adult field, as I am now—and I [want to keep] speaking on the subject of safe sex and drug-free healthy lives.

So maybe a book?

A book, no. I'm 32 years old; I can't write a book right now.

There are self-help books written by the Olsen twins! Why not Michael Lucas's Guide to Hot Sex?

That is very ambitious. [Laughs] Michael Lucas's Guide. My guide is my movies. It's so simple. You buy the video, and that is a guide. You asked me once, "Why don't you write, before the video starts, the message USE A CONDOM?" Because when you turn on the video you see the guys put on the condoms.

A picture's worth a thousand words.

Exactly. ∎

© LUCAS ENTERTAINMENT