UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------

| | |
|---|---|
| LBB CORPORATION d/b/a SPUNK VIDEO, ) | |
| ) | Civil Action No.: |
| Plaintiff, ) | **08-CV-04320 (SAS)** |
| ) | |
| v. ) | |
| ) | **ECF CASE** |
| LUCAS DISTRIBUTION, INC.; LUCAS ) | |
| ENTERTAINMENT, INC.; LUCAS PRODUCTIONS, ) | |
| INC.; and ANDREI TREIVAS BREGMAN p/k/a ) | |
| MICHAEL LUCAS; ) | |
| ) | |
| Defendants. ) | |

-----------------------------------------------------------------------

# MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

R. Brent English, Esq., Attorney at Law
Attorney for Plaintiff
225 Broadway, Suite 612
New York, New York 10007
(212) 962-3195

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................2

BACKGROUND ........................................................................................................................3

ARGUMENT .............................................................................................................................6

POINT I

PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION AND A TEMPORARY
RESTRAINING ORDER ENJOINING FURTHER COPYRIGHT INFRINGEMENT ....................6

    A.      The Copyright Act of 1976. ..........................................................................6

    B.      Plaintiff is Likely to Succeed on the Merits of its Copyright Infringement Claim ......7

    C.      The Standards for a Preliminary Injunction and Temporary Restraining Order ....... 11

          i.      Plaintiff will Suffer Irreparable Harm Absent a Preliminary Injunction ....... 12

          ii.      The Balance of the Hardships Weighs Heavily in Favor of LBB ................. 16


POINT II

THERE IS NO FAIR USE DEFENSE TO DEFENDANTS' PUBLICATION OF THE VIDEO ... 18

    A.      Purpose and Character of the Use. ............................................................... 18

    B.      Nature of the Copyrighted Work. ................................................................ 20

    C.      Amount and Substantiality of the Portion Used. ........................................... 20

    D.      Effect on the Market. ................................................................................ 21


POINT III

PLAINTIFF'S REQUEST FOR EXPEDITED DISCOVERY SHOULD BE GRANTED ............. 22

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996) ................................ 13

*Amalfitano v. Rosenberg*, No. 06-2364 (S.D.N.Y. July 15, 2008) ................................ 11

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ........... 17

*Arrow v. United Ind. v. Hugh Richards, Inc.*, 678 F.2d 410, 216 U.S.P.Q. 940 (2d Cir. 1982)... 17

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) ................................ 7

*Brown v. It's Entertainment Inc.*, 34 F.Supp.2d 854 (E.D.N.Y. 1999)........................................ 18

*Byrne v. British Broadcasting Corp.*, 132 F. Supp.2d 229, 234 (S.D.N.Y. 2001).................. 19, 20

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586,
114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) .......................................................................... 20, 21

*Castle Rock Entm't v. Carol Pub. Group Inc.*, 150 F.3d 132, 142 (2d Cir. 1998) ................ 19, 20

*Chambers v. NASCO*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991) .... 15

*Cherry River Music Co. v. Simitar Entertainment, Inc.*,
38 F.Supp.2d 310, 324 (S.D.N.Y. 1999) .......................................................................... 16, 18

*Citibank v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) .................................................. 16

*Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985)..................................................... 13

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
604 F.2d 200, 206-207 (2d Cir. 1979) ..................................................................................... 12

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
924 F.Supp 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997) ...................... 17

*Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F.Supp. 1329 (S.D.N.Y. 1986)......... 14

*Ellsworth Assocs., Inc. v. United States*, 917 F.Supp. 841, 844 (D.C. 1996) ............................... 23

*Energetics Sys. Corp. v. Advanced Cerametrics, Inc.*,
1996 WL 130991, at *2 (E.D. Pa. Mar 15, 1996)..................................................................... 23

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994)............... 12, 13

*Gund, Inc. v. Russ Berrie and Co., Inc.*, 701 F.Supp. 1013, 1018 (S.D.N.Y. 1998) ..................... 8

*Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) ........................................ 7

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)............................ 13

*Harper & Row Publishers. Inc. v. Nation Enterprises*,
    471 U.S. 539, 568, 105 S.Ct. 2218, 2234, 85 L.Ed.2d 588 (1985)............................................ 21

*Ice Music v. Schuler*, 1995 WL 498781 (S.D.N.Y. Aug. 17, 1995) ............................................ 18

*Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998).................................... 18

*International Brotherhood of Teamsters v. Local Union No. 810*, 19 F.3d 786 (2d Cir. 1994)... 12

*Jackson Diary, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) ........................ 12

*Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir. 1977) ...................... 16

*Lapham v. Porach*, 2007 WL 1224924 (S.D.N.Y.) .......................................................... 12

*Laureyssens v. Idea Group, Inc.*, 964 F.2d 131 (2d Cir. 1992) ........................................ 7

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995)........................................ 15

*Lennon v. Premise Media Corp., L.P.*, --- F.Supp.2d ----, 2008 WL 2262631 (S.D.N.Y.)...... 7, 12

*Lennon v. Seaman*, 63 F.Supp.2d 428 (S.D.N.Y. 1999) .................................................. 9

*Lennon v. Seaman*, 84 F.Supp.2d 522 (S.D.N.Y. 2000) .................................................. 9

*Lish v. Harper's Magazine Fund*, 807 F.Supp. 1090, 1100-01 (S.D.N.Y. 1992)........................ 19

*Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F.Supp. 356 (S.D.N.Y. 1992) ..................... 8

*MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981) ...................................................... 22

*Merit Diamond Corporation v. Frederick Goldman, Inc.*, 376 F.Supp.2d 517 (S.D.N.Y. 2005) .. 7

*Merkos L'Inyonei Church, Inc. v. Otsar Sifrei Lubavich, Inc.*, 312 F.3d 94 (2d Cir. 2002) ........ 12

*Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d 891,
    217 U.S.P.Q. 105 (2d Cir. 1982)............................................................................ 17

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) ..................... 8

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908-09 (2d Cir. 1990) ............................ 13

*Rosenfeld v. W.B. Saunders a Div. of Harcourt Brace Jovanovich, Inc.*,
    728 F.Supp. 236, 246-247 (S.D.N.Y. 1990), *aff'd* 923 F.2d 845 (2d Cir. 1990)...................... 13

*Salinger v. Random House, Inc.*, 811 F.2d 90, 99 (2d Cir. ), *cert. denied*, 484 U.S. 890 (1987). 21

*Sandoval v. New Line Cinema*, 147 F.3d 215 (2d Cir.1998) ........................................................ 20

*Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir. 1981)............................................... 15

*Sony Corp. of America v. Universal City Studios. Inc.*, 464 U.S. 417, 451,
    104 S.Ct. 774, 78 L.Ed.2d 574 (1984) ...................................................................................... 21

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
    155 F.Supp.2d 1, 27-28 (S.D.N.Y. 2001), *aff'd in part* 227 F.3d 253 (2d Cir. 2002)........ 13, 22

*Vanlines.com LLC, v. Net-Marketing Group Inc.*, 486 F.Supp.2d 292 (S.D.N.Y. 2007)............. 12

*Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 65 (S.D.N.Y. 1996) ........................... *passim*

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001) ........................................... 7

## Statutes

17 U.S.C. § 101 ................................................................................................................................ 7

17 U.S.C. § 106 ................................................................................................................................ 6

17 U.S.C. § 107 .............................................................................................................................. 18

17 U.S.C. § 107(1) ......................................................................................................................... 19

17 U.S.C. § 411(a) ........................................................................................................................... 9

17 U.S.C. § 502 ............................................................................................................................... 1

17 U.S.C. § 502(a) ........................................................................................................................... 1

## Rules

Federal Rule Civil Procedure §§ 30(b) ......................................................................................... 22

Federal Rule of Civil Procedure § 65 ............................................................................................. 1

Federal Rule of Civil Procedure § 65(a) ....................................................................................... 11

Federal Rule of Civil Procedure § 65(b) ....................................................................... 11

**Treatises**

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a], n. 39 ............... 9

4 *Patry on Copyright*, 10:13 ........................................................................................ 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------

| | |
|---|---|
| LBB CORPORATION d/b/a SPUNK VIDEO, )<br><br>Plaintiff, )<br><br>v. )<br><br>LUCAS  DISTRIBUTION,  INC.;  LUCAS ENTERTAINMENT, INC.; LUCAS PRODUCTIONS, INC.; and ANDREI TREIVAS BREGMAN p/k/a MICHAEL LUCAS; )<br><br>Defendants. ) | Civil Action No.:<br>**08-CV-04320 (SAS)**<br><br>**ECF CASE** |

------------------------------------------------------------------------

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING**
**ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

Plaintiff LBB CORPORATION d/b/a SPUNK VIDEO (hereinafter "LBB" or "Plaintiff"), by its attorney R. Brent English, Esq., respectfully submits this Memorandum of Law in support of its motion for a temporary restraining order and preliminary injunction pursuant to 17 U.S.C. § 502[1] and Federal Rule of Civil Procedure § 65, enjoining LUCAS DISTRIBUTION, INC.; LUCAS ENTERTAINMENT, INC.; LUCAS PRODUCTIONS, INC.; and ANDREI TREIVAS BREGMAN p/k/a MICHAEL LUCAS (collectively referred to as "the Lucas Defendants") from infringing upon the copyright in Plaintiff's title "Nasty Piss Boys". Plaintiff also seeks an order for expedited discovery needed for the preliminary injunction. All exhibits annexed to the Declarations of Roman Senko and Casey Dworkin are incorporated by reference and made a part hereof.

---

[1]    "Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

1

## PRELIMINARY STATEMENT

On May 7, 2008, Plaintiff filed this action asserting, *inter alia*, copyright infringement of its DVD film "Nasty Piss Boys" and all associated materials (hereinafter "the Work") reproduced by one, some or all of the Lucas Defendants who knowingly, willfully and deliberately adopted, imitated, paraphrased, plagiarized, pirated, displayed, distributed, sold and misappropriated the Work under their title "Raw Twinks in Czech".  Plaintiff petitions this Court for immediate relief to enjoin the Lucas Defendants from further infringement of Plaintiff's copyright.

Inasmuch as Plaintiff will suffer irreparable harm for which there is no other adequate remedy, and because balancing of the hardships weighs heavily in favor of the relief sought, Plaintiff requests a preliminary injunction (1) prohibiting the Lucas Defendants from further copyright infringement; (2) directing the Lucas Defendants to remove all of Plaintiff's copyrighted material in connection with the DVD feature "Nasty Piss Boys" that presently appears in the film "Raw Twinks in Czech", marketing materials, promotional materials and the like; (3) directing the Lucas Defendants to instantaneously return to Plaintiff, without further ado, all materials made and used in connection with the unauthorized use of the Work; and (4) recall, from any and all vendors, merchants, retailers, manufacturers, distributors and/or dealers, of all copies of "Raw Twinks in Czech" presently out in distribution.  Plaintiff also requests a restraining order enjoining the Lucas Defendants from expanding its infringing activities by increased dissemination of "Raw Twinks in Czech" to additional vendors, merchants, retailers, manufacturers, distributors and/or dealers.

To expedite these proceedings, and to minimize the continuing irreparable harm caused by the Lucas Defendants ongoing copyright infringement, Plaintiff also respectfully requests an

order granting certain narrowly drawn, expedited discovery to permit Plaintiff to determine the full nature and extent of improper and continuing infringing activities.

## BACKGROUND

LBB is a California corporation with its principal place of business at 601 Van Ness Avenue, # E3-324, San Francisco, California 94102.  LBB, with Mr. Casey Dworkin as its President, is a pornographic film production and distribution company that specializes in producing and distributing "fetish" type adult gay films and is the worldwide owner of all right, title and interest in and to the copyright of the Work.  Dworkin Decl. ¶¶ 1 – 2.  The Work is an adult gay film produced by Galaxia Entertainment in the Czech Republic.

Galaxia Entertainment (hereinafter referred to as "Galaxia") is a producer of various "fetish" type adult gay videos for sale by companies around the world and in the United States.  Senko Decl. ¶ 2.  Roman Senko is the principal of Galaxia.  Dworkin Decl. ¶ 2.  One such fetish type video produced by Galaxia is "bareback" videos (adult sex without the use of condoms).  *Id.*  LBB has previously commissioned bareback adult gay videos from Galaxia.  *Id.*  In the past, the Lucas Defendants also have commissioned adult gay videos from Galaxia.  *Id.*

In or about early 2007, Defendant MICHAEL LUCAS requested a video from Galaxia "and agreed to pay $6,000.00 United States Dollars ('USD') with $2,000.00 USD as a deposit."  Senko Decl. ¶ 3.  The Lucas Defendants did not execute an agreement with Galaxia for this production.  *Id.*  Notwithstanding the failure of the Lucas Defendants to execute a contract, Galaxia produced the movie now known as "Raw Twinks in Czech".  *Id.*  "Raw Twinks in Czech" is a four (4) scene "fetish" type adult gay film with eight (8) performers/models: Vaclav Skrabanek, Erik Mlynarik, Lucas Prchal, Jakub Korous, Frantisek Smejkal, Tobor Kovacs,

3

Bohumil Horacek and Jiri Skrabanek. *Id.* In the first scene, Vaclav Skrabanek and Erik Mlynarik perform together. *Id.* "The second scene has Lucas Prchal and Jakub Korous. Scene three features Frantisek Smejkal and Tobor Kovacs. Bohumil Horacek and Jiri Skrabanek perform together in scene four." *Id.*

According to Roman Senko, the Lucas Defendants remitted only $2,000.00 as a deposit and later refused to disburse the outstanding $4,000.00." Senko Decl. ¶ 4. Later, in an electronic mail dated 26.10.2007 from Defendant MICHAEL LUCAS to Roman Senko; Mr. Lucas indicated that Galaxia should sell this video to somebody else.[2] *Id.* In a contract dated November 6, 2007, Galaxia granted LBB ownership and all worldwide rights to the film, in addition to all associated materials. Senko Decl. ¶ 5.[3] LBB later named that film "Nasty Piss Boys". *Id.*

According to Mr. Dworkin,

> [t]he Work is a four (4) scene bareback type adult gay film that features the following eight (8) performers/models: Vaclav Skrabanek, Erik Mlynarik, Lucas Prchal, Jakub Korous, Frantisek Smejkal, Tobor Kovacs, Bohumil Horacek and Jiri Skrabanek. The first scene features Vaclav Skrabanek and Erik Mlynarik in a loft setting. The second scene presents Lucas Prchal and Jakub Korous performing together in a bedroom setting. Scene three features Frantisek Smejkal and Tobor Kovacs. Bohumil Horacek and Jiri Skrabanek perform together in scene four.

Dworkin Decl. ¶ 8.

Further, as of July 3, 2008, Plaintiff has sold at least "eight hundred (800) units of the Work in DVD format since January 2008." Dworkin Decl. ¶ 10.

The Lucas Defendants offered to sell, and/or began selling, "Raw Twinks in Czech" on or

---

[2]    Senko Decl. Ex. A. *See also* Dworkin Decl. ¶ 6.

[3]    Senko Decl. Ex. B. *See also* Dworkin Decl. ¶ 7.

about April 7, 2008.  Dworkin Decl. ¶¶ 11 – 13.  Orders for Defendants' film can be placed either online or via telephone at such Internet websites as http://www.tlavideo.com/.  The same may also be found using the following URL:   http://www.tlavideo.com/product/3-0-265121_raw-twinks-in-czech.html?sn=1.  Pre-orders and orders for Defendants' film can be placed with various adult wholesalers or retailers.[4]

After learning of this, LBB obtained a copy of this video on or about April 18, 2008 from a California based distributor.  Dworkin Decl. ¶ 12.  Mr. Dworkin unequivocally states that Plaintiff has not renounced or surrendered "any ownership rights in and to the Work" nor has any of the Lucas Defendants obtained authorization to use the Work.  Dworkin Decl. ¶ 13.[5]  When LBB learned that Defendants were exploiting, displaying, marketing, offering, distributing and selling the Work, it issued a cease and desist letter dated April 7, 2008 via FedEx.  *See* Dworkin Decl. Ex. C-1.

Notwithstanding LBB's cease and desist letter, the Lucas Defendants continued to duplicate, exploit, display, market, offer, distribute and sell the Work.  Subsequent thereto, LBB retained the services of the undersigned counsel who issued a second cease and desist letter, dated April 23, 2008, sent via Certified Mail, Return Receipt Requested.  Dworkin Decl. ¶ 14.[6]  Despite these demands, the Lucas Defendants continued the infringing activities.  As a result, Plaintiff commenced the instant action.

The Lucas Defendants answered Plaintiff's complaint stating

---

[4]     In their answer, the Lucas Defendants admit that Defendant LUCAS DISTRIBUTION commenced distribution of "Raw Twinks in Czech" on or about April 7, 2008 and that it is available for purchase at the URLs identified in Plaintiff's complaint.  Answer, ¶¶ 34 – 36.

[5]     Indeed, the Lucas Defendants, in their answer state "Admit that LBB did not grant the stated permission but deny that it was necessary."  Answer, ¶ 23.

[6]     *See also* Dworkin Decl. Ex. D-1.

> … the acts alleged in the Complaint were licensed according to the terms of the written license agreement between Lucas Entertainment, Inc.[,] and Roman Senko, the producer of the film in question, entitled *Raw Twinks in Czech*. A copy of that agreement is annexed hereto as Exhibit A, and Defendants respectfully refer the Court to [the] said license agreement for a recitation of the terms thereof.

Answer, ¶ 1. (Italics in original.)

For the reasons addressed below, Plaintiff denies the validity and applicability of that alleged license, contract or agreement, hereinafter referred to as "the Lucas Exhibit", and maintains that the Lucas Defendants, then and now, knowingly, willfully and deliberately adopted, imitated, paraphrased, plagiarized, pirated and misappropriated the Work, unlawfully infringing upon Plaintiff's copyright warranting, *inter alia*, the imposition of a temporary restraining order and preliminary injunction pursuant to Federal Rules of Civil Procedure § 65.


## ARGUMENT

## POINT I

### PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER ENJOINING FURTHER COPYRIGHT INFRINGEMENT.

### A.    The Copyright Act of 1976.

The Copyright Act of 1976 grants copyright owners a bundle of exclusive rights including the right to reproduce the copyrighted work and prepare derivative works based upon the copyrighted work. 17 U.S.C. § 106. "The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act …, and (2) the claims seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law

…" *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). "To establish a [prima facie] claim for copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." *Lennon v. Premise Media Corp., L.P.*, --- F.Supp.2d ----, 2008 WL 2262631 (S.D.N.Y.). *See also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) and *Merit Diamond Corporation v. Frederick Goldman, Inc.*, 376 F.Supp.2d 517 (S.D.N.Y. 2005). "A 'derivative work' is a work based on one or more preexisting works, such as a translation, … dramatization, fictionalization, motion picture version … abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Plaintiff does not argue that the infringing video is a derivative in that "Raw Twinks in Czech" is identical to the Work.

**B.**    **Plaintiff is Likely to Succeed on the Merits
of its Claim of Copyright Infringement.**

Plaintiff is likely to succeed on the merits of its claim of copyright infringement by the Lucas Defendants because (1) they had access to the Work, and (2) "Raw Twinks in Czech" is substantially similar, if not identical, to the Work. "It is now an axiom of copyright law that actionable copying can be inferred from the defendant's access to the copyrighted work and substantial similarity between the copyrighted work and the alleged infringement." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131 (2d Cir. 1992). As mentioned above, Defendant MICHAEL LUCAS requested a video from Galaxia "and agreed to pay $6,000.00 United States Dollars ('USD') with $2,000.00 USD as a deposit." Senko Decl. ¶ 3. The Lucas Defendants did not execute an agreement with Galaxia for this production and notwithstanding the failure of the

Lucas Defendants to complete payment therefore, Galaxia produced the movie now known as "Raw Twinks in Czech". *Id.*

"Raw Twinks in Czech" is a four (4) scene "fetish" type adult gay film with eight (8) performers/models: Vaclav Skrabanek, Erik Mlynarik, Lucas Prchal, Jakub Korous, Frantisek Smejkal, Tobor Kovacs, Bohumil Horacek and Jiri Skrabanek.  According to Roman Senko, the Lucas Defendants remitted only $2,000.00 as a deposit and later refused to disburse the outstanding $4,000.00."  Senko Decl. ¶ 4.  Later, in an electronic mail dated 26.10.2007 from Defendant MICHAEL LUCAS to Roman Senko, Mr. Lucas indicated that Galaxia should sell this video to somebody else.  In a contract dated November 6, 2007 exclusive to LBB, Galaxia sold all worldwide rights and interests in and to the video to Plaintiff.  Senko Decl. ¶ 5 and Dworkin Decl. ¶ 7. Further, in their answer, the Lucas Defendants admit that Defendant LUCAS DISTRIBUTION commenced distribution of "Raw Twinks in Czech" on or about April 7, 2008 and that it is available for purchase at the URLs identified in Plaintiff's complaint.  Answer, ¶¶ 34 – 36.  It is clear that defendant had access to the copyrighted material, duplicated it and began to sell it under a different name.

"Whether one work is substantially similar to another is determined by the 'ordinary observer' test, that is, in Judge Learned Hand's definition, whether the 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.' " *Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F.Supp. 356 (S.D.N.Y. 1992) *quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) and *Gund, Inc. v. Russ Berrie and Co., Inc.*, 701 F.Supp. 1013, 1018 (S.D.N.Y. 1998). Substantial similarity between the copyrighted work and the alleged infringement need not be inferred in this case.  Copies of the DVD's and DVD covers for "Nasty Piss Boys" and "Raw

Twinks in Czech" are annexed to the Declaration of Casey Dworkin at Exhibits "E-1" and "F-1", respectively.[7]   Casey Dworkin states that he has seen both videos and "[e]xcept for minor differences in formatting, not content, such as colors and bordering in the chapter selection menu, "Raw Twinks in Czech" is <u>identical</u> to the Work."  Dworkin Decl. ¶ 16.  (Emphasis in original.)  LBB has not relinquished any ownership rights in the Work nor has it engaged in any licensing negotiations or transactions with any of the Lucas Defendants.  Dworkin Decl. ¶ 17. Indeed, Plaintiff registered the Work with the United States Copyright office and paid the required fee for registration.  *Id.*  "Registration of copyright is a jurisdictional prerequisite for infringement actions."  *Lennon v. Seaman*, 63 F.Supp.2d 428 (S.D.N.Y. 1999) *citing* 17 U.S.C. § 411(a).  "This requirement can be met by filing an application for registration."  *Id.* at 432 *citing* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a], n. 39.  *See also Lennon v. Seaman*, 84 F.Supp.2d 522 (S.D.N.Y. 2000).  A copy of the canceled check made payable to the Register of Copyright is annexed to the Declaration of Casey Dworkin at Exhibit "G-1".

The Lucas Defendants aver that they have an agreement with Roman Senko of Galaxia Entertainment granting rights to the video.  Answer, ¶ 1.  However, Roman Senko denies the existence of any contract with regard to "Raw Twinks in Czech".  In his Declaration, and under the penalties of perjury and false swearing, Mr. Senko states:

> I read all five (5) pages of the Lucas Exhibit and I see that it is not accurate.  Pages two, three and four of the Lucas Exhibit were written for a video called "Inside Prague".  The contract for "Inside Prague" also was for $10,000.00; not $2,000.00.  A copy of the "Inside Prague" contract is attached here as exhibit "C".

Senko Decl. ¶ 6.

---

[7]     Recently, Plaintiff's counsel provided copies of "Nasty Piss Boys" and "Raw Twinks in Czech" under separate cover to the Court and to Defendant's counsel.

Mr. Senko also denies the validity of the Lucas Exhibit when he says:

> The Lucas Exhibit is dated June 7, 2007 on the first page and the last page is dated October 9, 2007. This is not correct because we fax contracts immediately. We would not wait four (4) months. Also, MICHAEL LUCAS was here in the Czech Republic on June 7, 2007. I do not know what contract page one and page five of the Lucas Exhibit deals with and page one of the Lucas Exhibit says there are seven (7) models when "Raw Twinks in Czech" has eight (8) models. But in any case, the exhibit to the answer of the Lucas Defendants does not deal with "Raw Twinks in Czech". Also, I sign all pages of all contracts. (See exhibits "B" and "C"). All the pages of the Lucas Exhibit are not signed by me.

Senko Decl. ¶ 7.

The Lucas Defendants admit "the identity of the actors and their order of appearance." Answer, ¶ 23. However, this admission does not bear the weight of comparison with the Lucas Exhibit and the video "Raw Twinks in Czech" itself. Based upon Mr. Senko's statement that (1) pages one and five of the Lucas Exhibit do not deal with "Raw Twinks in Czech"; (2) the dates on the first and last pages are four months apart and that Galaxia "fax[es] contracts immediately", Senko Decl. ¶ 7; (3) Defendant MICHAEL LUCAS was in the Czech Republic on June 7, 2007; (4) the Lucas Exhibit recites seven models and the infringing video contains eight models; (5) all of the pages in the Lucas Exhibit are not signed by Mr. Senko; and (6) Defendant MICHAEL LUCAS instructed Roman Senko to sell this video to somebody else after only paying $2,000.00 (USD), Senko Decl. ¶ 4,[8] it appears more likely than not that the Lucas Defendants may have fabricated this document by piecing together pages of other contracts.[9] If

---

[8]    *See also* Dworkin Decl. Ex. A-1.

[9]    In rebuttal, the Lucas Defendants may argue that the sworn statement of Roman Senko is to be given little weight because of the continued business relationship between Galaxia and LBB. (Senko Decl. ¶ 6.) However, Plaintiff notes that Galaxia produced at least two (2) other videos for the Lucas Defendants, to wit, "Inside Prague" and "Juvie Boys 2", Senko Decl. ¶ 2, and as a result of these statements, Galaxia may forfeit future business opportunities with the

this is indeed the case, such deception and misleading tactics must not be countenanced.[10]

Inasmuch as the Lucas Defendants do not have any entitlement to use the video or related

materials, their various defenses are completely lacking in merit and this contrived "contract" or

"license" is further evidence of their infringing activities.  Thus, Plaintiff will likely succeed on

the merits.


        **C.**      **The Standards for a Preliminary Injunction**
                      **and Temporary Restraining Order.**

Plaintiff is entitled to a preliminary injunction and a temporary restraining order and

enjoining the Lucas Defendants from further copyright infringement.  Federal Rule of Civil

Procedure § 65(a) provides for a preliminary injunction upon notice to the adverse party.  Federal

Rule of Civil Procedure § 65(b) states that

> A temporary restraining order may be granted without written or
> oral notice to the adverse party or that party's attorney only if (1) it
> clearly appears from specific facts shown by affidavit or by the
> verified complaint that immediate and irreparable injury, loss, or
> damage will result to the applicant before the adverse party or that
> party's attorney can be heard in opposition, and (2) the applicant's
> attorney certifies to the court in writing the efforts, if any, which
> have been made to give the notice and reasons supporting the
> claim that notice should not be required.

*Id.*

Stated differently, under the laws of the Second Circuit, to obtain a preliminary

injunction, Plaintiff must demonstrate (1) irreparable harm; and (2) either (i) a likelihood of

success on the merits, or (ii) present sufficiently serious questions going to the merits to make

them a fair ground for litigation, and (3) a balance of the hardships tipping in favor of the

moving party.  *See Merkos L'Inyonei Church, Inc. v. Otsar Sifrei Lubavich, Inc.*, 312 F.3d 94 (2d

---

Lucas Defendants.

[10]    *See, e.g. Amalfitano v. Rosenberg*, No. 06-2364 (S.D.N.Y. July 15, 2008).

Cir. 2002); *International Brotherhood of Teamsters v. Local Union No. 810*, 19 F.3d 786 (2d Cir. 1994); *Lennon v. Premise Media Corp., L.P.*, --- F.Supp.2d ----, 2008 WL 2262631 (S.D.N.Y.); *Lapham v. Porach*, 2007 WL 1224924 (S.D.N.Y.) and *Vanlines.com LLC, v. Net-Marketing Group Inc.*, 486 F.Supp.2d 292 (S.D.N.Y. 2007). The balance of the hardships must decidedly lean towards the party seeking the preliminary injunction. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206-207 (2d Cir. 1979).

By comparison, "substantial similarity is the hallmark of copyright infringement cases while "likelihood of confusion" is the basis in claims of trademark infringement. In cases of copyright infringement, irreparable harm is presumed once ownership and substantial similarity between a defendant's and a plaintiff's work are established. *Merkos* at 96. Should substantial similarity be sufficient to generate a likelihood of confusion in commerce, irreparable injury is presumed "because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways." *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994).

Based upon the statements made by Roman Senko and Casey Dworkin, it appears that the Lucas Defendants collaged pages of different contracts to create the Lucas Exhibit. Taking the statements of Messrs. Senko and Dworkin as true, Plaintiff has thus demonstrated both a likelihood of success on the merits and presented a sufficiently serious question going to the merits to make them a fair ground for litigation.

### (i)    Plaintiff Will Suffer Irreparable Harm Absent a Preliminary Injunction.

Irreparable harm is an injury for cannot be adequately compensated with a monetary award. *Jackson Diary, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). A key

factor to consider when deciding whether to grant a request for a preliminary injunction is the demonstration of irreparable harm. *See Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908-09 (2d Cir. 1990) and *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985). The Second Circuit in *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953), noted that

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt … it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.

*Id.*

"Irreparable harm" is harm "which is actual and imminent, not remote and speculative, and may only be demonstrated where the amount of damages will be largely indeterminate, or not precisely calculable in monetary terms." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F.Supp.2d 1, 27-28 (S.D.N.Y. 2001), *aff'd in part* 227 F.3d 253 (2d Cir. 2002). In the context of preliminary injunctive relief to enjoin infringement of a plaintiff's rights under the Copyright Act, irreparable harm is generally presumed once the claimant establishes a likelihood of success on the merits. *See ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996). *See also Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994) (irreparable harm presumed when infringed copyright creates confusion in the marketplace). The court in *Rosenfeld v. W.B. Saunders a Div. of Harcourt Brace Jovanovich, Inc.*, 728 F.Supp. 236, 246-247 (S.D.N.Y. 1990), *aff'd* 923 F.2d 845 (2d Cir. 1990) explained that

> In copyright infringement cases, the standard of issuance of injunctive relief is less rigorous than the traditional inquiry into irreparable harm and likelihood of success on the merits. A copyright plaintiff need not set forth a detailed showing of

> irreparable harm to obtain a preliminary injunction. Rather, the general rule in the Second Circuit is that a prima facie case of copyright infringement raises a presumption of irreparable harm.

*Id.* (Citations omitted.)

As mentioned above, as of July 3, 2008, Plaintiff has sold at least "eight hundred (800) units of the Work in DVD format since January 2008." Dworkin Decl. ¶ 10. The Lucas Defendants offered to sell, and/or began selling the infringing video "Raw Twinks in Czech" on or about April 7, 2008. Dworkin Decl. ¶¶ 11 – 13. Orders for Defendants' film can be placed either on the Internet or via telephone with various adult wholesalers or retailers.

The Lucas Defendants are selling the video "Raw Twinks in Czech" in interstate commerce. Answer, ¶¶ 34 – 35. Plaintiff averred harm and the Lucas Defendants admit that "a photograph that appears on the DVD cover of *Raw Twinks in* Czech also appears to be present on what is advertised as the DVD cover of Plaintiff's claimed film on Plaintiff's website …" Answer, ¶ 36. (Emphasis in original.) Thus, Plaintiff has sufficiently demonstrated that irreparable harm has already occurred and, in the absence of an injunction issued by the Court, irreparable harm will continue to surge from the unauthorized publication and distribution of the infringing video "Raw Twinks in Czech" by the Lucas Defendants.

The infringing activity wrongfully deprives LBB of its leverage as the lawful and exclusive copyright holder. In *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F.Supp. 1329 (S.D.N.Y. 1986), a computer software company petitioned for a preliminary injunction to prevent defendant from further use of that plaintiff's software programs. The Court issued a preliminary injunction finding that the defendant's continued unauthorized use of the claimant's copyrighted computer programs "satisfies the irreparable harm requirement even without the benefit of this presumption." *Id.* at 1337. More specifically, the Court determined that the

defendant's infringing activity deprived the plaintiff of its leverage as the sole lawful licensor stating:

> Defendants contend that DSI has brought this evil upon itself by seeking to terminate PCI's right to use the disputed software. This argument misses the point. Despite the complications arising from theses parties' prior dealings, DSI seeks to enforce essentially the same rights that many copyright claimants pray courts to enforce: the right to use the exclusivity of its copyrights as leverage in negotiations with one who, but for lawful license, would be barred from using that work. *The monetary worth of that leverage in such negotiations would be difficult, at best, to determine. That is sufficient to satisfy the irreparable harm requirement.*

*Id.* at 1337 (Emphasis added.)

In this case, the Lucas Defendants have brought this evil upon themselves by selling "Raw Twinks in Czech", a video which they do not own nor have any copyright or copyrightable interest. The Lucas Defendants are thus causing LBB irreparable harm that may only be minimized, not cured, by the issuance of a preliminary injunction.

Plaintiff respectfully submits that it has demonstrated a clear and substantial likelihood of success on the merits as set forth herein warranting the imposition of a preliminary injunction and a temporary restraining order. The determination of whether to grant injunctive relief is within the discretion of the Court. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995). A court exercising its equitable powers may provide relief necessary and proper to effect complete justice under the circumstances at issue. *See Chambers v. NASCO*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991) and *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir. 1981). Should a preliminary injunction and a temporary restraining order not issue, Plaintiff will continue to be irreparably harmed by the unauthorized and infringing use of "Raw Twinks in Czech" by the Lucas Defendants.

To further insure that Plaintiff is not harmed further by the conduct of the Lucas

Defendants, this Court, respectfully, should require the responding parties to recall all existing copies sent to any wholesalers, retailers, distributors and the like. Where a plaintiff has established a strong likelihood of success, the Court may issue a recall order to insure that LBB is not deprived of effective relief. *See Cherry River Music Co. v. Simitar Entertainment, Inc.*, 38 F.Supp.2d 310, 324 (S.D.N.Y. 1999) and *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 65 (S.D.N.Y. 1996).

In addition, the Lucas Defendants should be ordered to deliver and surrender to LBB for destruction all copies manufactured, reproduced, sold or otherwise used, intended to use, or possessed with the intent to use, and all plates, molds, matrices, tapes, films, film negatives, "master tapes", DVCam or mini-DV tape, raw footage or other articles by means of which duplicates of "Raw Twinks in Czech", or such other title that is or may be identical or substantially similar to the Work, may be made or reproduced. This is particularly appropriate where a defendant has refused to cease the infringing activities after receiving cease and desist letter. *Cherry River*, 38 F.Supp.2d at 323. The request relief is fitting given the questionable Lucas Exhibit.

### (ii)    The Balance of the Hardships Weighs Heavily in Favor of LBB.

The balance of the hardships decidedly tips in favor of Plaintiff. *See Citibank v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) and *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir. 1977). If the preliminary injunction issues, the inconvenience to the Lucas Defendants would be primarily economic in the form of delayed profits from the anticipated sales. This threat of economic loss – even if substantial in value – does not warrant tipping the balance in favor of the Lucas Defendants. The potential economic loss is a necessary consequence of protecting Plaintiff's rights. *See Woods*, 920 F.Supp. at 65 ("Universal argues

that it will suffer considerable financial loss if a preliminary injunction is granted. Copyright infringement can be expensive. The Copyright Law does not condone a practice of 'infringe now, pay later.' ") (citation omitted); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (a preliminary injunction must issue even where it has a "devastating effect" on an infringer's business; otherwise, "a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone.")

Any loss incurred by the Lucas Defendants as a result of a preliminary injunction is a loss which the law justifiably may call upon them to bear. This is particularly so because the Lucas Defendants brought this evil upon themselves by selling "Raw Twinks in Czech", a video which they do not own nor have any copyright or copyrightable interest. The Lucas Defendants made a calculated decision to openly market and sell a video which they did not own nor possess a copyrightable interest. Without the injunction, protected and valuable rights of Plaintiff will continue to be infringed upon and full redress will be rendered virtually impossible – this is the clearest form of irreparable harm. *See Arrow v. United Ind. v. Hugh Richards, Inc.*, 678 F.2d 410, 216 U.S.P.Q. 940 (2d Cir. 1982), *Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d 891, 217 U.S.P.Q. 105 (2d Cir. 1982) and *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 65 (S.D.N.Y. 1996).

The inability of these infringing defendants to profit from the sale of Plaintiff's product is not a hardship that will defeat a preliminary injunction. *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 65 (S.D.N.Y. 1996) (granting preliminary injunction against movie studio despite the hardship to it caused by delayed major release of motion picture) and *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F.Supp 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997) (granting preliminary injunction even though "[d]efendant may

17

lose some profits and goodwill with distributors").  LBB's application for a preliminary injunction should therefore be granted to prevent the Lucas Defendants from further infringing Plaintiff's copyright.  *See Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 65 (S.D.N.Y. 1996); *Ice Music v. Schuler*, 1995 WL 498781 (S.D.N.Y. Aug. 17, 1995) (granting preliminary injunction enjoining defendant from manufacturing and distributing an album infringing on plaintiff's copyright in a musical composition); *Brown v. It's Entertainment Inc.*, 34 F.Supp.2d 854 (E.D.N.Y. 1999) (enjoining defendant from exploiting costumes which infringed plaintiff's rights in cartoon characters); *Cherry River Music Co. v. Simitar Entertainment, Inc.*, 38 F.Supp.2d 310, 322 (S.D.N.Y. 1999) (enjoining defendant from distributing infringing album).

## POINT II

### THERE IS NO FAIR USE DEFENSE
### TO DEFENDANTS' PUBLICATION OF THE VIDEO.[11]

The Lucas Defendants' use of the Work does not survive analysis under the four statutory Fair Use factors: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the potential market for or value of the Work.  17 U.S.C. § 107.

### A.    Purpose and Character of the Use.

The first factor set forth in the statute to consider is "the purpose and character of the [allegedly infringing] use, including whether such use is of a commercial nature or is for

---

[11]    While the burden of proving "fair use" pursuant to 17 U.S.C. § 107 rests squarely on the alleged infringer, *see Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998), Plaintiff addresses this issue herein as the Lucas Defendants asserted the same as a defense. Answer, pg. 7.

nonprofit educational purposes."  17 U.S.C. § 107(1).  As noted by the leading fair use scholar William Patry, "the first factor directs the courts to examine whether the particular use made of copyrighted material was <u>necessary</u> to the asserted purpose of criticism, comment, etc., or instead, whether defendant's purpose could have been accomplished by taking non[-]protectable material such as facts, ideas, or less expression."  4 *Patry on Copyright*, 10:13 (Emphasis added.) *See also Roy Export Co. v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1100 (2d Cir. 1982).  Clearly, use of the Work was not necessary to further any debate on theories safer sex. There was absolutely no reason whatsoever use LBB's video.

The two most common inquiries in analyses of this factor are whether the use was for a commercial purpose and the extent to which the use was "transformative," *i.e.*, "whether the allegedly infringing work 'merely supersedes' the original work 'or instead adds something new, with a further purpose or different character, altering the first with new ... meaning [] or message.' "  *Castle Rock Entm't v. Carol Pub. Group Inc.*, 150 F.3d 132, 142 (2d Cir. 1998) (citations omitted); *see also Byrne v. British Broadcasting Corp.*, 132 F. Supp.2d 229, 234 (S.D.N.Y. 2001).  The extent to which the use is transformative is "the more critical inquiry."  *Id.*

The Lucas Defendants are entities engaged in the business of film production and distribution for the purpose of making money.  The use of the Work was not "non-commercial" The question under factor one is the purpose and character of the use, not of the alleged infringer."  *Lish v. Harper's Magazine Fund*, 807 F.Supp. 1090, 1100-01 (S.D.N.Y. 1992). Clearly, not all unlicensed uses of copyrighted material for inclusion in broadcasts or films that present material of interest to the public are protected by the fair use doctrine, even if they are labeled as such by Defendants.  The use of the Work was plainly to entertain rather than inform.

**B.     Nature of the Copyrighted Work.**

The second factor set forth in the statute is "the nature of the copyrighted work."   It cannot be disputed that the Work is a creative work, and thus the type of work at "the core" of copyright law's protection.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994); *Byrne*, 132 F.Supp.2d at 235.   Where the allegedly infringing use is minimally transformative, however, the creative nature of a copyrighted work remains significant.  *Castle Rock Entm't*, 150 F.3d at 144.  In this case, the Lucas Defendants duplicated the Work verbatim.  Thus, the creative nature of the Work remains noteworthy and substantial.

**C.     Amount and Substantiality of the Portion Used.**

Courts must examine the third fair use factor – "the amount and substantiality of the portion [of the copyrighted work] used in relation to the copyrighted work as a whole" – in context.  *Castle Rock Entm't*, 150 F.3d at 144.  "The inquiry must focus upon whether '[tlhe extent of ... copying' is consistent with or more than necessary to further 'the purpose and character of the use.' "  *Id. quoting Campbell*, 510 U.S. at 587-87, 114 S.Ct. 1164).   As mentioned above, the Lucas Defendants copied the work in its entirety.[12]   For this particular video, the use of the Work is far greater than a *de minimis"* use.[13]  *See Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62 (S.D.N.Y. 1996).   *See also, generally*, *Sandoval v. New Line Cinema*, 147 F.3d 215 (2d Cir.1998).

---

[12]     Casey Dworkin states that he has seen both videos and "[e]xcept for minor differences in formatting, not content, such as colors and bordering in the chapter selection menu, "Raw Twinks in Czech" is <u>identical</u> to the Work."  Dworkin Decl. ¶ 16.  (Emphasis in original.)

[13]     Answer, pg. 7.

D.    **Effect on the Market.**

The fourth factor is the effect of the use upon the potential market for or value of the copyrighted work.  When evaluating this factor the court must "consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market" for the original or derivative works. *Campbell*, 510 U.S. at 590, 114 S.Ct. 1164.[14]

This factor requires courts to consider not only the extent of market harm caused by the specific use in question, but the effect that would occur if that type of use became widespread. *See Harper & Row Publishers. Inc. v. Nation Enterprises*, 471 U.S. 539, 568, 105 S.Ct. 2218, 2234, 85 L.Ed.2d 588 (1985); *Sony Corp. of America v. Universal City Studios. Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).  Here, the Defendants' instantly recognizable use of the Work supports that the value of and market potential for this work has been usurped. Thus, the infringing activities seriously encroaches upon the potential market for the Work, and this factor weighs decidedly in Plaintiff's favor.

This factor is "undoubtedly the single most important element of fair use."  *Harper & Row Publishers. Inc. v. Nation Enterprises*, 471 U.S. 539, 568, 105 S.Ct. 2218, 2234, 85 L.Ed.2d 588 (1985) and *Salinger v. Random House, Inc.*, 811 F.2d 90, 99 (2d Cir. ), *cert. denied*, 484 U.S. 890 (1987).  Because the purpose of the Copyright Act is to "assure contributors to the store of knowledge a fair return for their labors," *Harper & Row*, 471 U.S. at 546, a fair use analysis must "provid[el the artist with the financial motivation for creativity that flows from a limited

---

[14]    Where, as here, the purpose of the defendants' work is commercial, "the likelihood [or market harm] may be presumed."  *A&M Records. Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001) (*quoting Sony Corp. of America v. Universal City Studios. Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984)).

form of monopoly." *MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981). Plaintiff's decision to license the Work for certain uses, or to refrain from doing so, is a choice within Plaintiff's sole discretion. It is clear that the intent of the Lucas Defendants in pirating the Work was motivated, at least, to recoup the $2,000.00 deposit. Senko Decl. ¶ 4.

As Judge Cedarbaum noted in *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 67 (S.D.N.Y. 1996):

> While an injunction is not the automatic consequence of infringement and equitable considerations are always germane to the determination of whether an injunction is appropriate, in the vast majority of cases, an injunction is justified "because most infringements are simple piracy."

(Citations omitted). The same reasoning applies here.

## POINT III

### PLAINTIFF'S REQUEST FOR
### EXPEDITED DISCOVERY SHOULD BE GRANTED.

District courts have broad power to permit expedited discovery to permit for early depositions and to command early document production in appropriate cases.[15] Expedited discovery may be granted when the concerned party seeking the same makes plain "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if expedited relief is granted." *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F.Supp. 473, 475 (S.D.N.Y. 1990).

---

[15]    *See* Federal Rule Civil Procedure §§ 30(b) and 34(b) .

LBB requests that expedited discovery be taken of the Lucas Defendants to determine the full nature and extent of their infringing activities. Pursuant to Federal Rule of Civil Procedure § 26(d), the Court has wide discretion to govern the temporal parameters of discovery. Expedited discovery is proper in cases involving requests for information necessary to bring a motion for a preliminary injunction or other immediate relief. *See, e.g. Energetics Sys. Corp. v. Advanced Cerametrics, Inc.*, 1996 WL 130991, at *2 (E.D. Pa. Mar 15, 1996) and *Ellsworth Assocs., Inc. v. United States*, 917 F.Supp. 841, 844 (D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings.")

The instant matter is apposite for expedited discovery because Plaintiff seeks limited, though pertinent, discovery so that it may present a full and complete record to the court at a hearing for a preliminary injunction. Plaintiff will seek (1) the production of documents concerning production of "Raw Twinks in Czech" including, but not limited to, correspondence by, between and amongst any of the Lucas Defendants and Galaxia Entertainment; (2) income and revenue generated by the infringing activities of the Lucas Defendants; and (3) names, addresses and telephone numbers of any and all vendors, merchants, retailers, manufacturers, distributors and/or dealers who received "Raw Twinks in Czech", or any part thereof.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its motion for a temporary restraining order and a preliminary injunction should be granted in its entirety as follows:

(1)     Enjoining and prohibiting the Lucas Defendants, and all of their officers, directors, affiliates, successors, assigns, agents, servants, employees and those in privity with

any of them, from continued infringement, selling, offering to sell, advertising, marketing, streaming or otherwise distributing any audio-visual work or works identical or substantially similar to the Work;

(2)    Recalling for delivery, surrender and destruction all copies manufactured, reproduced, sold or otherwise used, intended to use, or possessed with the intent to use, and all plates, molds, matrices, tapes, films, film negatives, "master tapes", DVCam or mini-DV tape, raw footage or other articles by means of which duplicates of "Raw Twinks in Czech", or such other title that is or may be identical or substantially similar to the Work, may be made or reproduced; and

(3)    Awarding to Plaintiff costs, attorneys fees; and

(4)    Such other and further relief as this Court may deem just and proper.

To accelerate these proceedings and to minimize the irreparable harm caused by the Lucas Defendants' continued malfeasance, LBB also respectfully requests an Order granting expedited discovery in this case.

Dated: New York, New York
       July 18, 2008

                                        Respectfully submitted,

                                        R. Brent English, Esq., Attorney at Law
                                        Attorney for Plaintiff
                                        LBB CORPORATION d/b/a SPUNK VIDEO

                                        By: _____
                                             R. Brent English (RBE – 3575)

                                        225 Broadway, Suite 612
                                        New York, New York 10007
                                        Tele    : (212) 962-3195
                                        Fax     : (646) 390-8021
                                        E-mail : rbenglish_esq@att.net